IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Herman Belton, # 256396,       )
                               )
                               )       Civil Action No. 6:15-262-JMC-KFM
                Petitioner,    )
                               )       **REPORT OF MAGISTRATE JUDGE**
        vs.                    )
                               )
Warden of Broad River Correctional )
Institution,                   )
                               )
                Respondent.    )
_____)

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at the Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Anderson County Grand Jury in June 2006 for trafficking crack cocaine (2006-GS-04-1844) (app. 1–3).[1] On February 5–6, 2007, the petitioner received a jury trial before the Honorable Thomas W. Cooper, Jr., South Carolina Circuit Court Judge (app. 1–216). The petitioner was represented at trial by Kurt Tavernier. Assistant Solicitor Scott McElhannon represented the State (app. 1, 20). The jury convicted the petitioner of

_____

[1]Although the cover page of Volume 1 of the trial transcript incorrectly lists the indictment number prior to jury selection, pages 2–3 of the appendix and Volume 2 of the trial transcript correctly identify the indictment number as 2006-GS-04-1844 (app. 20).

trafficking more than 100 grams but less than 200 grams of crack cocaine (app. 207–08). Judge Cooper sentenced the petitioner to twenty-five years in prison (app. 214–15).

### Underlying Case Facts

The State presented four witnesses in its case against the petitioner. Officers Andy Heaton and Christopher Lemmons with the Anderson Police Department testified about their arrest of the petitioner (app. 77–120). On May 3, 2006, around 9:30 p.m., the officers were patrolling a neighborhood in which they had received some complaints about drug activity (app. 78, 101). The officers observed that the petitioner's bike was parked outside the particular house about which they had received complaints (app. 79, 101–03). The two officers were familiar with the petitioner and his bike because they had encountered him in the past (app. 79, 103–04). A few minutes later, the officers saw that the petitioner's bike was no longer at the house, and they saw him riding down the street (app. 79–80, 103–04). The officers were in an unmarked sport utility vehicle ("SUV") (app. 80). They pulled up beside the petitioner, identified themselves as the police, and asked to speak with him (app. 80, 103–05). The officers noticed that the petitioner had a metallic object in his hand that was shaped like a taco (app. 81, 104–07). The petitioner fled on his bicycle, and at some point, he threw his bike down and continued to flee on foot (app. 81, 105–06). The officers were eventually able to detain the petitioner and found that he no longer had the metallic object (app. 81, 106–07). Officer Heaton located the object, which was wrapped in aluminum foil, a few feet from where the petitioner had fallen during the pursuit (app. 81–82). The foil was wet and was still warm to the touch, although it was a cool evening (app. 82). When Officer Heaton opened the aluminum foil, he found "a very large amount of a white rock-like substance[,] which we believed to be crack cocaine that was wrapped in two paper towels" (app. 82).

The State presented the testimony of Officer Michael Baskin, who worked as the evidence custodian for Anderson City Police Department (app. 121–27). The State also

2

presented the testimony of Jason Waldkirch, a forensic scientist with the South Carolina Law Enforcement Division ("SLED"), who tested the recovered evidence from the petitioner and found it to be 106.38 grams of crack cocaine (app. 127–33).

The defense presented three witnesses on the petitioner's behalf. Two witnesses, who were across the street at the time of the petitioner's detention and arrest, testified about what they observed (app. 145–62). The petitioner also testified (app. 163–72).

### Direct Appeal

Trial counsel filed a Notice of Appeal on the petitioner's behalf (doc. 17-5). On March 11, 2008, LaNelle C. DuRant, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed an *Anders* brief[2] on the petitioner's behalf (app. 355–67). Appellate counsel argued in that brief that "[t]he trial judge erred in denying Appellant's motion to suppress the drugs when there was no probable cause to stop Appellant" (app. 360). Appellate counsel also submitted a request to be relieved as counsel because "in her opinion, the appeal [was] without legal merit sufficient to warrant a new trial" (app. 365).

On July 10, 2008, the Clerk of the South Carolina Court of Appeals advised the petitioner that he could "file with this Court a *pro se* brief addressing any issues you believe the Court should consider in this appeal" (doc. 17-4). The petitioner filed a *pro se* brief, which was received by the court on August 20, 2008, asserting that there was no probable cause for his arrest (doc. 17-5). In a submission received by the court on September 5, 2008, the petitioner corrected an error in a citation from his *pro se* brief (doc. 17-6).

---

[2]*See Anders v. California*, 386 U.S. 738 (1967).

3

In an unpublished opinion filed November 19, 2009, the South Carolina Court of Appeals dismissed the petitioner's direct appeal (app. 353–54). The court also granted appellate counsel's motion to be relieved as counsel (app. 353). *See State v. Herman Belton*, Unpublished Opinion No. 2009-UP-526 (S.C. Ct. App. Nov. 19, 2009).

Thereafter, the petitioner submitted letters to the court of appeals, which were filed by the court as a *pro se* petition for rehearing (docs. 17-7, 17-8, 17-9). The court denied the petition for rehearing on January 21, 2010 (doc. 17-10). The court issued the remittitur on February 25, 2010 (doc. 17-11).

**PCR**

The petitioner filed an application for post-conviction relief ("PCR:), Case No. 2010-CP-04-0678, on February 24, 2010 (app. 217–24). The petitioner outlined the substance of his claims in the application for PCR as follows:

> 9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (a) "Ineffective Assistance of Counsel"
>
> (b) Prosecutorial Mis Conduct
>
> (c) Violation of Due Process and Equal Protection of Law:
>
> 10. State concisely and in the same order the facts which support each of the grounds set out in (9):
>
> (a) Will Amend later: SEE Memorandum
>
> (b) Will Amend later: SEE Memorandum
>
> (c) Will Amend later: SEE Memorandum

(App. 218–19). In his attached memorandum, the petitioner further detailed his claims (verbatim):

> #10 (A) "Ineffective Assistance of Counsel"
>
> Trial counsel refused to properly investigate, present evidence, cross examine, and make motions to suppress the evidence,

4

Note: At this point, I am alleging "Fraud on the Court" Also obstruction of Justice" and/or "Tampering with Evidence." (on the State) Will Explain in open court. (Possible 3rd party guil[ty)]

(B) "Prosecutorial Mis Conduct"

Prosecutor refused to fulfill his duty as a prosecutor because the prosecutor has a duty to disclose exculpatory evidence in its possession or control when the evidence may be material to the outcome of the case. The prosecution's withholding of such information violates the defendant's due process Rights, and is thereby a Brady violation. Brady v. Maryland 373 U.S. 83, 83 S. Ct. 1194 (1963)

Note: At this point I am declaring the State to be in violation of § 16-9-10, which is perjury and subornation of perjury. (See indictment and other documents as exhibits)

Anything else: I will explain in open court.

(C) Violation of Due Process and Equal Protection

By way of "Deliberate Deception" I have therefore been denied a fair trial that's due me as a right protected by the 6th United States Constitution Amendment which is equal to Art. 1 and 14 of the S.C. State Constitution; as a result of that action, my 14th United States Constitution Right and/or S.C. State Constitution Art. 1 and 3 right, which is equal protection and due process rights, were violated.

And under the (Procedural) Due Process and equal protection of law, I do declare the State to be in violation of § 16-17-722; which is: filing a false police report (which I will be glad to enter as exhibit) As well as being in violation of § 16-17-410; which is "conspiracy" or would you say "chain criminal conspiracy?" (I will be more than glad to explain in open court)

Thru out this entire process I have showed evidence of "perjury and subornation of perjury," "fraud on the court," obstruction of justice and or tampering with evidence as well as "abuse of discretion."

I suggest we look at this for what it is, a miscarriage of justice

This is just another case of "Malicious Prosecution" as a result of "malice."

(App. 223–24).

5

The State made its return to the application on June 30, 2010 (app. 247–50). On June 3, 2011, J. Chris Brown, PCR counsel for the petitioner, submitted an amended PCR application, which incorporated by reference the petitioner's letter with attachments to the Attorney General's Office (app. 225–46). In the letter, the petitioner asserted he was writing "to bring to your attention that I have been 'wrongfully convicted' as a result of a [*sic*] 'invalid indictment' as well as 'manufactured evidence' and 'perjured testimony'" (app. 226). The petitioner also attached a number of documents in support of his PCR claims (app. 226–46). An evidentiary hearing was held on June 8, 2011, before the Honorable Alexander S. Macaulay, South Carolina Circuit Court Judge (app. 251–326). The petitioner was present and represented by PCR counsel at the hearing. The State was represented by Assistant Attorneys General Kaelon E. May and Sally Elliott (app. 251). By order dated November 8, 2011, and filed November 10, 2011, Judge Macaulay found that the petitioner had not established any constitutional violations or deprivations and denied and dismissed the PCR application *with prejudice* (app. 333–47).

### PCR Appeal

On December 7, 2011, PCR counsel filed a Notice of Appeal on the petitioner's behalf (doc. 17-13). On August 6, 2012, LaNelle Cantey Durant, an Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a petition for writ of certiorari, raising the following issues:

> 1. Did the PCR court err in failing to find trial counsel ineffective for prohibiting an appellate review of Belton's case which was procedurally barred because trial counsel did not make a contemporaneous objection to the admission of the drugs after he made a pretrial motion to suppress the drugs because the police lacked probable cause to stop Belton?
>
> 2. Did the PCR court err in failing to find trial counsel ineffective for not objecting to the indictment which was not true billed during a term of General Sessions Court as required pursuant to S.C. Code Section 14-9-210?

(Doc. 17-14).

6

On July 22, 2013, Assistant Attorney General John W. Whitmire filed a return to the petition for writ of certiorari (doc. 17-15). In an order dated July 3, 2014, the South Carolina Court of Appeals denied the petition (doc. 17-16). The Remittitur was issued on July 23, 2014 (doc. 17-17).

## FEDERAL PETITION

On January 20, 2015, the petitioner filed his Section 2254 petition (doc. 1). On April 15, 2015, the respondent filed a motion for summary judgment (doc. 16). By order filed April 16, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the motion (doc. 18). On June 19, 2015, the petitioner filed his response in opposition (doc. 24).

In his federal habeas petition, the petitioner makes the following claims:

> **Ground One**:  Ineffective Assistance of Counsel
> Supporting Facts: Demonstrating counsel's deficient performance during critical states of criminal proceeding.
>
> **Ground Two**:  Defective Indictment
>
> **Ground Three**:  "Fabricated/Manufactured Evidence" Where lab test results were manipulated, altered and changed. Supporting Facts: Where prosecution withheld approximately 17 of 21 pages of the SLED lab Report and disclosed only 4 pages to the defense before trial.
>
> **Ground Four**: Prosecutorial Misconduct/Due Process violation Withholding exculpatory SLED lab Report.

(Doc. 1 at 5, 6, 8, 10). In the memorandum attached to his petition, the petitioner makes a number of arguments as part of his Ground One assertion that trial counsel was ineffective—(1) for failing to investigate and argue the petitioner's crime was an accommodation offense; (2) for failing to challenge the indictment; and (3) for failing to object to the admission of drugs (doc. 1-1 at 7-21). The petitioner also notes what he describes as "a few important points": (1) counsel during trial and at the PCR hearing failed to mention a third party guilt situation (a home close by having a cookout) for which, if any

7

drugs where actually discovered, could have belonged to a resident or visiting resident, since police presence was in the neighborhood; (2) that once police "force me into the curve" and off my bike, for Fourth Amendment purposes, a seizure had occurred without any probable cause; (3) the subsequent evidence recovered at SLED, for which neither the trial court or the PCR judge had in their possession when rendering decisions; and (4) the "terminations" of both Andy Heaton and Christopher Lemmons from the Anderson Police Force (doc. 1-1 at 25). At the conclusion of the memorandum, the petitioner lists his habeas claims as follows:

> (1) Ineffective assistance of counsel; (2) The defective indictment and procedure accompanying such; (3) Prosecutorial Misconduct, by failing to include "the entire SLED lab Reports"; (4) Manufactured evidence, clearly exposed by the misconduct of police; (5) and purjurred testimony; (6) as well as illegal search and seizure.

(Doc. 1-1 at 25 (errors in original)).

As noted by the respondent (doc. 17 at 10 n.7), the numbering system used in the petitioner's memorandum in support of his petition does not correspond to that in his petition. Therefore, in addressing the petitioner's grounds for relief, the undersigned will consider the grounds in the same order and manner as the respondent: Ground One – all ineffective assistance of counsel claims; Ground Two – defective indictment; Grounds Three and Four (to be considered together) – due process claims and prosecutorial misconduct claims concerning evidence; and Ground Five – stand-alone Fourth Amendment claim.

## APPLICABLE LAW

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Habeas Corpus Standard of Review*

Because the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA, federal courts may not grant habeas corpus relief on any claim that was adjudicated on the merits in state court unless the underlying state adjudication: (1) resulted

9

in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1), (2). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S .C. § 2254(e)(1).

**Exhaustion**

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[3]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re*

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990).  In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]*."  559 S.E.2d at 854.  Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal."  *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003).  Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); and *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The respondent acknowledges that the petitioner has no available state court remedies left to him, and, therefore, he has technically exhausted his claims (doc. 17 at 10-11).

### Procedural Bar

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no

further means of bringing that issue before the state courts.  In such a situation, the person

has bypassed his state remedies and, as such, is procedurally barred from raising the issue

in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state

proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S.

527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has

procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or an application for PCR and the

deadlines for filing have passed, he or she is barred from proceeding in state court. If the

state courts have applied a procedural bar to a claim because of an earlier default in the

state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and
> efficiency of judicial decisions, but also the finality of those
> decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and while
> the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to

raise at the time and in the manner required under state law unless 'the prisoner

demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v.

Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536

(2006)).  To show cause, a petitioner must "show that some objective factor external to the

defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v.

Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not

reasonably available to the claimant at the time of the state proceeding." *Roach v.

Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure

to consider the claims will result in a fundamental miscarriage of justice."  *McCarver v. Lee*,

221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. at 750).  A

fundamental miscarriage of justice equates to the conviction of someone who is actually

innocent.   However, "actual innocence" requires "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

       In *Martinez v. Ryan*, 182 L.Ed.2d 272, 132 S.Ct. 1309, 1315 (2012), the Supreme Court of the United States carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

       The respondent argues that each of the grounds for relief alleged by the petitioner is procedurally barred except for his claim in Ground One that trial counsel was ineffective for failing to challenge his indictment and Ground Five, which the respondent argues is not cognizable.  The undersigned agrees.  The remaining portions of Ground One, as well as Grounds Two, Three, and Four, and the various claims raised within each of those grounds, are procedurally barred because they were not raised to and ruled on by

the PCR court and/or were not raised in the PCR appeal, and the petitioner has failed to show cause and prejudice for the default. *See Marlar*, 653 S.E.2d at 266 (S.C. 2007) ("The failure to specifically rule on the issues precludes appellate review of the issues.").

## ANALYSIS

### Ground One

As discussed above, the petitioner alleges several ineffective assistance of counsel claims, all of which will be considered in Ground One.  To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1)  trial counsel's performance fell below an objective standard of reasonableness, and (2)  a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).  The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

14

### *Failure to Investigate*

The petitioner first asserts that trial counsel was ineffective for failing to properly investigate his case (doc. 6-1 at 5, 24–28). In particular, the petitioner appears to argue that trial counsel failed to properly investigate the law in two respects—first, in failing to investigate a law that he asserts would have entitled him to a lesser sentence and, second, in failing to investigate the law under which he was convicted. Neither of these issues was raised to and ruled upon by the PCR court, and, as a result, both have been procedurally defaulted. To the extent the petitioner asserts that PCR counsel was ineffective in failing to raise and preserve those grounds, such an allegation is insufficient to overcome the default as the petitioner cannot "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318.

The petitioner argues that he would have been entitled to a lesser sentence under South Carolina Code Annotated § 44-53-460 had trial counsel done a proper investigation into the law. This statute allows for reduced sentences for accommodation offenses:

> Any person who enters a plea of guilty to or is found guilty of a violation of § 44-53-370(a) or (c) may move for and the court shall grant a further hearing at which evidence may be presented by the person, and by the prosecution if it so desires, relating to the nature of the act on the basis of which the person has been convicted. If the convicted person establishes by clear and convincing evidence that he delivered or possessed with intent to deliver a controlled substance, except a controlled substance classified in Schedule I (b) and (c) which is a narcotic drug or lysergic acid diethylamide (LSD) and in Schedule II which is a narcotic drug, only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled or counterfeit substance to use or become addicted to or dependent upon the substance, the court shall sentence the person as if he had been convicted of a violation of § 44-53-370(c).

15

S.C. Code Ann. § 44-53-460. However, the above statute is not applicable to the petitioner's case for a number of reasons. First, the petitioner was not found guilty of a violation of § 44-53-370. He was convicted of trafficking crack cocaine, a violation of § 44-53-375(C)(3). Thus, a reduced sentence would not be appropriate. Furthermore, although the petitioner attempts to rely on the above statute, his block quotation of the statute omits the caveat that S.C. Code Ann. § 44-53-460 does not apply to Schedule I (b) and (c) and Schedule II drugs. Crack cocaine is a Schedule II drug. *See* S.C. Code Ann. § 44-53-210 (including derivatives of coca leaves as Schedule II drugs). Accordingly, the statute the petitioner relies on is not applicable to his case, and trial counsel was not ineffective for failing to move for a lesser sentence based on S.C. Code Ann. § 44-53-460. The petitioner's additional arguments regarding harsher sentences for crack cocaine appear to relate to this same issue (doc. 6-1 at 26–27). The respondent argues that these arguments cannot overcome the deficiencies in the petitioner's claim. This court agrees.

The trial court charged the jury that, in order for the petitioner to be found guilty of trafficking crack cocaine, the State had to prove that the petitioner was in actual or constructive possession of the crack cocaine. The petitioner now argues that he was not in possession of the crack cocaine and that trial counsel was ineffective for failing to pursue this argument, which he asserts would have prevented his conviction. However, the State presented evidence that the officers who stopped the petitioner saw him riding his bike with aluminum foil in his hand, and when they tried to get him to come over so they could speak to him, he ran away into the woods. They chased after him, and when they detained him, he no longer had the aluminum foil. After a brief search, they found the aluminum foil, which was warm, and discovered that it contained a large amount of wet crack cocaine. The petitioner argues that he was never in constructive possession of the crack because it was not in his "dominion and control" because he did not own it. However, the fact remains that the State presented evidence that the petitioner was in actual possession of the crack

16

cocaine, so his argument that he was never in constructive possession is irrelevant.  Trial counsel was not ineffective for pursuing this line of argument as it is meritless.  *See, e.g., Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable."), *appeal dismissed*, 100 F. App'x 953 (4th Cir. June 22, 2014).

Neither of the petitioner's claims that trial counsel was ineffective for failure to investigate state laws pertaining to his offense and sentence are preserved for habeas review, and they should be dismissed as procedurally defaulted.

### *Failure to Challenge Indictment*

The petitioner next contends that his trial counsel was ineffective for failing to challenge his indictment.   This claim was raised to and ruled on by the PCR court and was subsequently raised in the PCR appeal.   Accordingly, it will be addressed on the merits.

At the PCR evidentiary hearing, the petitioner questioned the validity of the indictment "[b]ecause it plainly states that a Court of General Sessions convened in Anderson County on, rubber stamp, June 27th, 2006.  And from research by way of the South Carolina Judicial Department calendar we found out that there was indeed no General Sessions during the week of June 26th, 2006" (app. 267).  Trial counsel confirmed that he did not raise that issue but noted that the indictment appears to be sufficient as far as providing the petitioner with notice of the charges against him (app. 306–07).  During the evidentiary hearing, the PCR court noted:

> [A]s far as General Sessions Court, a grand jury is a continuing body, and they meet for a whole year. In fact, six of them meet for two years. So, I mean, they're held over. So, they meet whenever they are scheduled to meet. It doesn't have to be a General Sessions term. Sometimes you have judges who are presiding in Common Pleas signing a General Sessions, a grand jury report.

17

(App. 317).

The PCR court denied the same claim that the petitioner now raises in his federal habeas petition:

> As to Applicant's allegation counsel was ineffective for failing to challenge the indictment, this Court finds this allegation is without merit. Counsel testified that in his review of the indictment, he saw nothing to base an objection or challenge on. This Court noted at the PCR hearing that the grand jury is a continuing body that meets all year and does not necessarily have to meet during a general sessions term. Defects in the indictment do not affect subject matter jurisdiction. *See State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005); *U.S. v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781 (2002). The indictment is a notice document, and any challenges to its sufficiency must be made in accordance with S.C. Code Ann. § 17-19-90 (2003). *See also* S.C. Code § 17-19-20 (2003). Subject matter jurisdiction is the power of a court to hear a particular class of cases, and it has nothing to do with the indictment document. *See Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005); *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 442 S.E.2d 598 (1994). An Applicant may still challenge the subject matter jurisdiction of the trial court, and such a claim is one that may be raised at any time. *See Brown v. State*, 343 S.C. 342, 540 S.E.2d 846 (2001), *overruled in part by Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005). However, "[c]ircuit courts obviously have subject matter jurisdiction to try criminal matters." *Gentry*, 363 S.C. 93, 610 S.E.2d 494, 499 (2005); *See also* S.C. Const. Art. V, § 7. Thus, the Applicant must present evidence that his case is of some class over which the circuit court does not have the authority to preside. The Applicant's conviction involved a criminal charge in General Sessions Court. Thus, the circuit court had subject matter jurisdiction. Therefore, this Court finds that this allegation is denied and dismissed.

(App. 343–44). In denying and dismissing the claim, the PCR court made reasonable factual findings, which are entitled to deference in this action, and reasonably applied federal precedent. Thus, the petitioner is not entitled to relief.

The statute that petitioner now relies upon—S.C. Code Ann. § 14-9-210—is not applicable to his case as it pertains to county courts, which have been abolished. *See Austelle v. Austelle*, 362 S.E.2d 181, 182 (S.C. 1987) ("County courts were later abolished

and their jurisdiction developed upon the unified court system." (citing Act No. 690, Article VII, Section 5, 1976 S.C. Acts 1859, 1874)); and *State ex rel. McLeod v. Civil and Criminal Court of Horry Cnty.*, 217 S.E.2d 23, 24 (S.C. 1975).[4]  Contrary to the petitioner's claim, a grand jury may meet at any time ordered by a circuit judge. *See* S.C. Code Ann. §§ 14-5-910 to -940 (allowing for terms of court not provided for by law); *see also* Order No. 2011-02-04-01 (S.C. Supreme Court Order dated Feb. 4, 2011) (authorizing chief judge for administrative purposes to "determine the dates for the convening of the grand jury in the various counties within the judicial circuit").  Accordingly, a grand jury is not unlawfully impaneled simply because it does not meet during a term of court as provided for in sections 14-5-620 to -820.[5]  *See State v. Jeffcoat*, 1 S.E. 440, 441 (S.C. 1887) ("[M]erely changing the time for holding the court . . . did not make the grand jury illegal."). Furthermore, absent evidence to the contrary, the regularity and legality of the proceedings before a grand jury is presumed. *Cf. Weathers v. State*, 459 S.E.2d 838 (S.C. 1995) (noting regularity of proceedings in general sessions court is presumed); *see also State v. Thompson*, 409 S.E.2d 420 (S.C. Ct. App. 1991) (noting proceedings before the grand jury are presumed to be regular unless there is clear evidence to the contrary).  The petitioner's indictment is valid on its face because it states all the necessary elements of the crime, the date of the offense, and the name of the accused. *Costello v. United States*, 350 U.S. 359, 363 (1956). Likewise, the indictment is stamped "True Billed" and signed by the foreman. *See Pringle v. State*, 339 S.E.2d 127, 128 (S.C. 1986).  Thus, the petitioner's indictment

---

[4]Section 22 of Article V of the Constitution of the State of South Carolina (1973) allowed "any existing court" on the date of ratification to continue operating until Article V was fully implemented.  *State ex rel. McLeod v. Civil and Criminal Court of Horry County*, 217 S.E.2d at 24 ("The Horry County Court is one of the courts continued in existence solely by virtue of the provisions of Section 22 of Article V.").

[5]S.C. Code Ann. § 14-5-750 specifically sets forth the terms of court in the Tenth Judicial Circuit, where Anderson County is located.

was lawfully obtained.  Plea counsel did not provide deficient performance by failing to challenge the indictment.

Moreover, even had trial counsel moved to quash the indictment and been successful, jeopardy does not attach until a jury is sworn or the plea judge accepts the guilty plea. *Crist v. Bretz*, 437 U.S. 28, 37 (1978); *United States v. Hecht*, 638 F.2d 651, 657 (3d Cir. 1981).  Under this well-settled principle, the State would have been readily able to re-indict the petitioner on the same charge.  Accordingly, the petitioner was not prejudiced by PCR counsel's alleged failure, and he is not entitled to habeas relief based on this claim.

### Failure to Object to Admission of Drug Evidence

The petitioner next asserts that trial counsel was ineffective for failing to object to the admission of the crack cocaine into evidence.  Specifically, the petitioner alleges trial counsel was ineffective for failing to: (1) contemporaneously object to the admission of the drugs, thereby failing to preserve the issue for appeal; (2) raise issues related to the chain of custody of the drugs; and (3) have the drugs excluded based on an alleged violation of the Fourth Amendment (doc. 6-1 at 33-40)).  All of these arguments are procedurally barred. As will be discussed below, the petitioner's first argument is barred because it was not specifically ruled upon by the PCR court, and the second and third arguments are barred because they were not raised in the PCR appeal.

At the PCR evidentiary hearing, the petitioner pointed out discrepancies in chain of custody forms pertaining to the drugs in his case (app. 269–76).  For example, he noted that a "control number" at the top of the form (app. 327; doc. 17-18) originally read "B 177556," but that had been marked through, initialed, and a new control number had been written, "B 177528" (app. 269).  The petitioner testified that he did not know why the document had been altered (app. 270).  A second form (app. 328) had the name "Mike Baskins" marked through (app. 271–72).  The petitioner noted that a third form (app. 329) described the drugs differently from the other two—one said "Item 15, 14595, one,

aluminum foil, contains off-white, rock-like substance wrapped in two paper towels" and the other said "aluminum foil contains rock-like substance wrapped in two paper towels" (app. 275).  The petitioner also noted that the notarization on that form was actually prior to his arrest and the relevant dates on the form (app. 273–74).  The petitioner asserted that if these discrepancies in his chain of custody forms had been presented at trial, they would have "[m]ost definitely" made a difference in the outcome (app. 274).  The petitioner also testified that the *Fowler* case,[6] which was referenced at trial, was "a mere reflection of my case" (app. 279).  The drugs in *Fowler* were suppressed, but they were not suppressed in the petitioner's case, and he asserted "[t]here was never an objection made" in his case (app. 280).

Trial counsel testified that he checked on the discrepancies in the chain of custody with Officer Baskin (app. 292).  He explained that the BEST kit number was changed because originally the crack was still wet when packed in a BEST kit, which was improper procedure for maintaining the evidence (app. 293).  Consequently, the crack was removed from the first BEST kit and repacked so that it could dry properly (app. 293–94).  In investigating the evidence, trial counsel confirmed that all persons in the chain of custody were available (app. 294).  He also explained that there was a period of time where SLED was not notarizing the delivery of evidence, so police departments were pre-notarizing the forms, which created a problem that he knew about (app. 294–95). However, trial counsel declined to raise this notarization issue based on information he received in other cases

---

[6]In *State v. Fowler*, 471 S.E.2d 706 (S.C. Ct. App. 1996), the South Carolina Court of Appeals affirmed a trial court's suppression of evidence where police stopped the defendant while they were patrolling a "high drug area."  The officers had seen the defendant come from the front yard of a suspected drug house and had witnessed him walking "in a 'suspicious manner,' act[ing] 'kind of scared,' and 'appear[ing] as if possibly he was [*sic*] trying to [elude] us.'" 471 S.E.2d at 707.  The officers were familiar with the defendant and knew he had convictions for prior drug offenses. *Id.*  The court found that the facts did not support the State's position that the officers "had an articulable suspicion Fowler was involved in criminal activity," and, therefore, the stop was unconstitutional under *Terry v. Ohio*, 392 U.S. 1 (1968).

that jurors did not "care for the fact that the officer had been beaten up on the stand when he hadn't tampered with evidence" (app. 295–97). Thus, he made the strategic decision not to raise the discrepancies (app. 304–06). With regard to the *Fowler* issue, trial counsel testified that he made a pretrial motion to suppress the admission of the drugs into evidence based upon lack of probable cause for the stop, but the trial judge ruled the drugs were admissible (app. 299; *see* app. 25-57).

The PCR court rejected the petitioner's arguments that trial counsel was ineffective for failing to highlight issues in the chain of custody for the drugs and for failing to properly present a motion to suppress the drugs based on the *Fowler* case:

> Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also Dempsey v. State*, 363 S.C. 365, 610 S.E.2d 812 (2005) and *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). Counsel testified that the SLED notarization issue had in previous cases not swayed the jury into believing there was tampering with the evidence. Counsel explained that he did not challenge the officer's discrepancies based on unsuccessful attempts in the past and based on information from previous jurors. A review of the record indicates counsel did highlight the notarization discrepancy, but not by challenging the police officers. Counsel explained that the trial strategy was whether the Applicant had the drugs in his possession not whether the substance was crack. Applicant's trial counsel articulated a valid strategic reasons for presenting the evidence the way he did and for his method of cross-examination, thus this Court finds that Applicant has not shown that counsel was deficient in that choice of tactics. This Court, further, finds that Applicant has failed to show that he was prejudiced. Therefore, these allegations are denied and dismissed.
>
> With regards to Applicant's allegations that trial counsel was ineffective for failing to make motions to suppress the evidence and not properly presenting the *Fowler* case to the court, this Court finds that the Applicant has failed to meet his burden of proof. The record reflects counsel's argument concerning *Fowler* was proper and although Judge Cooper ruled against counsel this does not make counsel's argument incorrect. Moreover, counsel's argument based on *Fowler* was in the

> context of a motion to suppress, therefore Applicant's allegation that counsel failed to make a motion to suppress the evidence fails. Counsel testified that in his review of the chain of custody there was nothing to base an objection or motion to suppress on. Applicant fails to show counsel's argument using *Fowler* was incorrect or what counsel should have argued instead. This Court finds the Applicant has failed to show that counsel's performance was deficient and that Applicant was prejudiced by any alleged deficiency; therefore, this Court finds these allegations are denied and dismissed.

(App. 342–43).  The PCR court's findings are based, in part, on trial counsel's testimony, which the PCR court found to be credible, a finding entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)).  The petitioner has shown no cause to discount the PCR court's factual findings, and none is readily apparent.  The record supports the PCR court's conclusion that the petitioner failed to establish that trial counsel rendered deficient performance by failing to raise various challenges to the evidence.

In any event, trial counsel's decision not to raise the discrepancies is not ineffectiveness. *See Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir.1995) ("The Supreme Court has recognized that strategies devised after extensively investigating the law and facts relevant to any and all probable options are virtually unchallengeable.  A reviewing court may not permit the benefit of hindsight to impact its review." (internal citation omitted)).  *Accord Fleming v. Kemp*, 748 F.2d 1435, 1451 (11th Cir. 1984) ("Defense counsel are allowed a

23

considerable breadth of discretion in choosing their trial strategies."). Much like attacks on the effectiveness of counsel's cross-examination of a witness and other matters of trial strategy, the respondent argues that this was a matter entrusted to the professional discretion of counsel. This court agrees. *See Strickland*, 466 U.S. at 690 (where a defendant focuses on counsel's "strategic choices made after thorough investigation of law and facts," such choices "are virtually unchallengeable").

As noted above, the petitioner's claims that trial counsel was ineffective for failing to raise issues related to the chain of custody of the drugs and for failing to have the drugs excluded based on an alleged violation of the Fourth Amendment were not raised in the PCR appeal.[7] A claim of ineffective assistance of PCR appellate counsel cannot constitute cause to excuse the default of these claims. *Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. at 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here."). The petitioner fails to show cause in that he has not shown "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Moreover, the

---

[7]In his PCR appeal, the petitioner did make an argument related to his claim in PCR that trial counsel was ineffective for failing to make a motion to suppress the evidence and for not properly presenting the *Fowler* case; he argued in the PCR appeal that the PCR court erred in failing to find that trial counsel was ineffective in failing to make a contemporaneous objection to the admission of the drugs based upon lack of probable cause for the stop (*see* doc. 17-14). To the extent the district court finds that the Fourth Amendment issue presented here is not procedurally barred, the claim fails on the merits because the PCR court's decision was a reasonable application of Supreme Court precedent, and the decision was based upon a reasonable application of the facts presented in the PCR hearing.

petitioner cannot show prejudice from the procedural default of these claims because they lack merit, as discussed above, under *Strickland*. Accordingly, these claims are procedurally barred.

With regard to the petitioner's claim that trial counsel failed to preserve the Fourth Amendment issue for appeal because he failed to make a contemporaneous objection to the admission of the drugs into evidence at trial, that claim has been procedurally defaulted because it was not specifically ruled upon by the PCR court[8] and no Rule 59(e) motion was made (*see* doc. 17-15 at 5-10). *See Marlar*, 653 S.E.2d at 267. Accordingly, while the issue was raised in the PCR appeal (doc. 17-14 at 5-9), "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003).  To the extent the petitioner argues that the ineffective assistance of PCR counsel establishes cause for the default under *Martinez*, such claim fails because this ineffective assistance of trial counsel claim lacks merit.  The trial court had already determined in a pretrial hearing that the evidence was admissible, even in light of the *Fowler* case.[9] The petitioner has failed to point to any evidence presented at trial

---

[8]The PCR judge found that the petitioner failed to meet his burden to prove his trial counsel was ineffective for making a deficient suppression argument at the pretrial hearing (app. 343), but the PCR judge did not specifically rule on the issue of whether trial counsel was ineffective for failing to contemporaneously object to the admissibility of the drugs during trial.

[9]The trial court recited the facts of *Fowler* but found the circumstances in the petitioner's case to be distinguishable:

> In this particular case we have more than that. We have two things. We have a combination of things. Not only the articulable suspicion that I just spoke about a few moments ago. But when they stopped him and said we want to speak to you—as they have a right to do, to make those investigative field interviews—they observed the tin foil. It could have been a taco, at least initially.
>
> But then when he ran, they had a right to have their suspicions arouse even further, which, in fact, they were. And when he was detained, they found the drugs in the area of where he had been.

(continued...)

between the motion *in limine* and the admission of the crack cocaine that would have necessitated the trial court changing its ruling. Accordingly, even assuming the petitioner could show deficient performance for trial counsel's failure to make a contemporaneous objection, he cannot show prejudice. All of the arguments concerning trial counsel's failure to have the drugs excluded are procedurally barred. Even if they were available for habeas review, the petitioner would not be entitled to relief for the reasons outlined above.

### *Failure to Raise Third Party Guilt*

The petitioner further asserts that trial counsel was ineffective for failing to raise and present witnesses to support a claim of third party guilt (doc. 6-1 at 40). This claim was not raised to or ruled upon by the PCR court and has been procedurally defaulted. Additionally, the factual basis has not been fully developed as the petitioner failed to present any specific evidence regarding third party guilt at the PCR evidentiary hearing. As argued by the respondent, with nothing more than speculation that a third-party-guilt claim was even viable in the petitioner's case, the parameters of this claim are too vague, and this claim should be summarily dismissed. *See Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (summary disposition of habeas petition appropriate where allegations are vague or conclusory); and *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error."), which is cited in *Grant v. Bush*, C.A. No. 6:14-cv-01313-DCN, 2015 WL 4747104, at *16 (D.S.C. Aug. 11, 2015). "Vague allegations, without any explanation of the alleged constitutional errors, do not warrant federal habeas relief." *McKissick v. Warden Evans Correctional Inst.*, C.A. No. 2:12-cv-15-RBH, 2013 WL

---

(...continued)
(App. 55–57). The trial court found the drugs to be admissible and denied the motion to suppress as to the crack, but granted the motion as to anything found on the petitioner's person (app. 57).

4585613, at *10 (D.S.C. Aug.28, 2013) (citing Rule 2(c) of the Rules Governing Section 2254 Cases ("The petition must ... state the facts supporting each ground....")).

### Failure to Raise Issues Regarding Officers

In his habeas petition, the petitioner also alleges that Officers Heaton and Lemmons were terminated from the Anderson Police Department (doc. 6-1 at 40). The petitioner appears to rely on the letters attached to his petition (doc. 6-1 at 74–76) for these claims. One letter purports to be the resignation of Christopher Lemmons, and the other, the resignation of Andy Heaton. These claims were never raised to nor ruled upon by a state court. Additionally, trial counsel could not have been ineffective for failing to raise these issues as, even if these documents were authenticated, they apparently were not created until 2012, well after the petitioner's trial. Neither document states that it has anything to do with the petitioner's case. Accordingly, any ineffective assistance of counsel or stand-alone claim with regard to these officers fails.

### Ground Two

In Ground Two, the petitioner claims that the indictment in his case was defective. This claim is procedurally barred as a stand-alone claim because no objection was made to the indictment at the petitioner's trial. *See Evans v. State*, 611 S.E.2d 510, 518 (S.C. 2005) ("A defendant must challenge the legality and sufficiency of the process of the state grand jury before the jury renders a verdict in order to preserve the error for direct appellate review."). Because it was not preserved at the trial level, this claim could only be broached as part of an ineffective assistance of counsel claim, which the petitioner did as discussed above. The underlying claim lacks merit for the reasons discussed above with respect to the ineffective assistance of counsel claim. Accordingly, the petitioner is not entitled to habeas relief on this claim.

***Grounds Three and Four***

In Grounds Three and Four, the petitioner raises several issues concerning the evidence in his case - asserting that the prosecution withheld pages of the SLED drug report, that lab results were manipulated, altered, and changed, and that there was perjured testimony in his case. Based on these assertions, the petitioner submits that there was prosecutorial misconduct, that his right to due process was violated, and that a *Brady* violation occurred (doc. 6-1 at 10, 40). *See Brady v. Maryland*, 373 U.S. 83 (1963) (prosecutors must disclose exculpatory evidence to criminal defendants). Although the PCR court made findings of fact and conclusions of law with regard to these claims, the PCR court's rulings on these issues were not raised at PCR appeal. A claim of ineffective assistance of PCR appellate counsel cannot constitute cause to excuse the default of these claims. *See Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. at 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here."). Moreover, the petitioner cannot show prejudice from the procedural default of these claims because they lack merit, as discussed below. Accordingly, the claims are procedurally barred.

The petitioner's claims of manufactured evidence appear to be based on the discrepancies he noted in some of the chain of custody forms for the drug evidence in his case (*see* app. 285-87). He also asserted at his PCR hearing that the State had not provided him with the full SLED lab report because the SLED lab report that his attorney

had was only four pages, and a letter he received when he requested his lab report indicated that they were providing him with ten pages (app. 233–44, 276–77).

As trial counsel pointed out during his testimony at the PCR hearing, the main lab report from SLED was four pages (app. 301–03, 330–31). Trial counsel also testified that the Solicitor's Office had an open file policy, so he had all of the discovery readily available to him (app. 308–09).

The PCR court rejected the petitioner's claims of prosecutorial misconduct, finding as follows:

> The Applicant alleges the prosecution committed a *Brady* violation, manufactured evidence, presented perjured testimony, and failed to provide 6 pages of the 10 page SLED report. It is Applicant's burden to prove actual prosecutorial misconduct. *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201 (1989). This Court finds that Applicant presented no evidence of manufactured evidence. This Court notes that each of the changes made to the documents entered into evidence by Applicant contain [*sic*] initials next to each modification of the report. Counsel testified and adequately explained the meaning of the modifications and this Court finds no evidence of the manufacturing of evidence. Counsel also testified that while he only received the first 4 pages of the SLED at first, he later was provided with the remaining 6 pages. Counsel testified that he had all of the state's discovery and no reason to believe otherwise. This Court finds that the Applicant has not presented any evidence that was not in counsel's possession prior to or during trial. This Court further finds that the Applicant has failed to prove the existence of any perjured testimony.
>
> The Applicant provided no evidence or testimony showing that the state withheld any evidence from the defense in this case at the PCR hearing. In evaluating post-trial *Brady* claims, the Applicant must show that (1) the prosecution suppressed evidence, (2) the evidence would have been favorable to the accused, and (3) the suppressed evidence is material. *United States v. Wolf*, 839 F.2d 1387 (10th Cir. 1988). A *Brady* violation does not warrant reversal if the evidence is merely cumulative or impeaching. *Clark v. State*, 315 S.C. 385, 434 S.E.2d 266 (1993). "Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, 434 S.E.2d at 268.

29

> Accordingly, the Applicant has failed to meet his burden of proof; therefore these allegations are denied and dismissed.

(App. 344–45).   The PCR court's factual findings are reasonable and are entitled to deference in this action. *See Cagle*, 520 F.3d at 324.  Indeed, the record supports the PCR court's findings that the petitioner failed to present any evidence that the State either manufactured or withheld evidence.  Even now, the petitioner has failed to point to any exculpatory or material evidence contained in the SLED documents he asserts were withheld.  The PCR court expressly applied federal law in denying and dismissing the petitioner's claims of prosecutorial misconduct and *Brady* violations, and the court did not misapply the federal precedent.  Even if these grounds were not procedurally defaulted, the petitioner would not be entitled to relief.

### Ground Five

The petitioner asserts that the officers did not have probable cause for the search and seizure, which led to the discovery of the crack cocaine. To the extent that the petitioner means to allege an ineffective assistance of counsel claim, that claim has been fully addressed above. To the extent the petitioner means to raise a freestanding illegal search claim, the undersigned agrees with the respondent that such a claim is barred by the *Stone* Doctrine.

The United States Supreme Court held in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that a federal court sitting in habeas may not grant relief on a Fourth Amendment claim if "the State has provided an opportunity for full and fair litigation" of the claim. In applying this bar, the Fourth Circuit has found that when the habeas court has determined that litigation opportunity was afforded, the habeas court "need not inquire further into the merits of the petitioner's case . . . ." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). *See Simpson v. Stevenson*, C.A. No. 5:12-2612-CMC-KDW, 2013 WL 3229685, at *1 (D.S.C. June 25, 2013) (holding that "[f]ully litigated Fourth Amendment claims are not

30

cognizable in federal habeas corpus petitions, even after the enactment of the AEDPA") (citation omitted). The petitioner had a full trial and was represented by and had the assistance of counsel, who actually challenged the search on the presently asserted basis. Thereafter, in an *Anders* brief, appellate counsel challenged the trial court's determination that the police had probable cause to stop the petitioner. The Court of Appeals dismissed the direct appeal. Thus, the petitioner had an opportunity to litigate his Fourth Amendment claim, and the *Stone* Doctrine applies. Further, as discussed more fully above, the trial transcript demonstrates that the trial court did not err in denying the petitioner's motion to suppress after the court concluded that the officers had probable cause to stop the petitioner. Even so, the freestanding allegation is barred from habeas litigation, and this ground should be summarily dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 16) be **granted**. It is also recommended that the district court deny a certificate of appealability. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

September 11, 2015
Greenville, South Carolina

31

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).